DAVID H. COYLE, plaintiff in error, *v.* GEORGE GRAY, Attorney General of the State of Delaware, who sues for the said State, *ex relatione*, HENRY B. McINTIRE, defendant in error.

*Municipal Corporation—Legislative Control.*

A corporation is an artificial being and possesses such powers only as are conferred upon it by its charter, either expressly or as incidental to its existence.

A municipal corporation is a body politic and corporate established by law to assist in the civil government of the State with delegated authority to regulate and administer the local or internal affairs of a city, town or district which is incorporated; and is created exclusively for the public advantage without other endowments than such as the government may bestow upon it, and may be controlled and its constitution altered and amended by the legislature in such manner as the public interest may require. There is but one party to it and therefore it is not founded upon contract.

The city of Wilmington is a public municipal corporation. It is merely a revocable agency instituted by the State for the purpose of carrying out in detail the objects of government. It has no vested right to any of its powers or franchises. It can acquire and hold property for public uses only. Its charter, or act of incorporation, is in no sense a contract with the State. It is subject to the control of the Legislature who may enlarge or diminish its territorial extent or its functions, and may change or modify its internal arrangement or destroy its very existence at discretion without the consent or even against the will of the inhabitants. None of its franchises, rights or powers are held independently of or in defiance of the Legislature. The Legislature may appoint all or any of the corporate agencies through which it acts.

The act of the Legislature establishing a Board of Water Commissioners for the city of Wilmington is constitutional and valid; and the commissioners appointed by the Legislature in said Act may remove the chief engineer of the Water Department of the City of Wilmington, who was appointed by the City Council, and appoint another in his place; and by mandamus may require the said chief engineer to surrender his office and the property connected therewith to his successor thus appointed.

(*July 22, 1884.*)

ERROR to the Superior Court in and for New Castle County.

INFORMATION in the nature of *quo warranto.*

Statement of facts appear in Opinion of Court on page 84.

*Edward G. Bradford, Jr.*, for plaintiff in error:

The judgment in this case was rendered upon an information in the nature of a writ of *quo warranto* against David H. Coyle, for an alleged usurpation of the office of Chief Engineer of the Water Department of the City of Wilmington.

Prior to the passage of the act of April 13, 1883, entitled

" An Act to Revise and Consolidate the Statutes relating to the " City of Wilmington," *17 Del. Laws, 424,* the " Mayor and " Council of Wilmington " was by its charter authorized and empowered to purchase or erect pumps, or any other apparatus, for supplying the citizens of Wilmington with good and wholesome water, to repair and amend the same, and to assess and receive a tax therefor; also to construct reservoirs, to improve the water works of the said city, and to enlarge the conveniences for supplying the citizens of said city with water; also to acquire, hold and dispose of real and personal property for these purposes, and to borrow divers sums of money for the same purposes, and to issue its bonds to secure the repayment of the loans.

In the exercise of the power and authority so conferred the said corporation did, prior to the passage of the Act of April 13, 1883, have full control of all matters relating to water supply in Wilmington, and did acquire, hold and own a large amount of real and personal property to that end.

At the time of the passage of the Act aforesaid, under and by virtue of divers ordinances of the said corporation, the Chief Engineer of the Water Department was entitled to the charge and care of the water works of Wilmington, and the property connected therewith, subject to the general superintendence and direction of the Water Committee of the City Council, and to the control of said Council.

Under and by virtue of the ordinances of the said corporation, David H. Coyle was elected Chief Engineer of the Water Department, by the City Council, at its first stated meeting in December, 1882. He afterwards duly qualified for the performance of his official duty, and on the first day of January, 1883, entered into office and has since continued the legally elected and duly qualified Chief Engineer, save in so far as his official tenure may have been terminated by reason of the facts hereinafter stated.

The Act of April, 1883, does not in any of its provisions mention or specifically notice the Water Department of the City of Wilmington, nor does it abolish the Department, or in any way interfere with its organization or property.

§§ 1, 151, Act of April 13, 1883, 17, *Del. Laws,* pp. 425, 492.

The Act of April 18, 1883, entitled " An Act to Establish a

Board of Water Commissioners for the City of Wilmington, and for other purposes," *17 Del. Laws, 408*, although unconstitutional and void, it is submitted, amounts to a legislative recognition of the existence at that time of the Water Department, with its organization unaffected by the Act of April 13, 1883.

The central question in the case is not one of political expediency or propriety, but of legislative power.

Had the legislature the power, under existing circumstances, to take from the " Mayor and Council of Wilmington " the management and control of its Water Department, and of all matters and property connected therewith, without the consent and against the will of the said corporation, and vest the management and control of the same in a Board of Water Commissioners, not elected or appointed by the City of Wilmington, or any of its authorities, but named in the Act creating the Board?

A municipal corporation proper, like a private corporation, is an artificial, legal being, or person, created for certain purposes, and not possessing any other powers, or faculties, than those which the law has, either expressly, or by fair implication, conferred upon it.

But although a legal, artificial person, a municipal corporation is by no means a mere abstraction.

Dillon says: " Persons residing in or inhabiting a place to be " incorporated, as well as the place itself, are—both *the persons* and " *the place*—indispensable to the constitution of a municipal cor- " poration."

*1 Dillon Mun. Corp.*, 3d Ed.; §§ 14, 19, 21, 66, 183.

It is to be presumed that the Legislature, in granting any charter of incorporation, intends to benefit the community, or to a certain extent promote the general welfare.

But the fact that the objects to be attained by a corporation may be attended with benefit to the community, or connected with the general welfare, or be of incidental advantage to the public, will not make the corporation a *public* one.

*Dartmouth College case*, 4 Wheaton, 518, 637, 669, 671; *Allen v. McKeen*, 1 Sumn., 276, 296–298.

A municipal corporation proper is unquestionably a public corporation, in the proper sense of the term, in so far as it has been

created and made to serve as an agency or representation of the State government, in the exercise of the duties and franchises of sovereignty.

But the fact that a municipal corporation proper is a public corporation, is not in the least inconsistent with the proposition, that in the discharge of many of its functions, and with respect to rights of property, it may be clothed with the character of and may be, a *quasi*-private corporation.

It is not necessary to contend that a municipal corporation proper can be at once, in fact, a public and also a private corporation.

But that it may be a quasi-private corporation, and, in relation to its purely local concerns, clothed, in most respects, with the rights, immunities and liabilities of a private corporation, there is no reason to doubt, either upon the authorities or the reason of the case.

*Dartmouth College Case,* 4 Wheaton, 636 ; *State Bank of Ohio v. Knoop,* 16 How., 369, 380, 381.

In the exercise, then, of powers and franchises which affect the locality and do not form part of the civil government of the State, or contain the essential elements of sovereignty, a municipal corporation proper is no more "a State instrument," than any private corporation endowed with similar powers and franchises.

It is not a mere agency of the State for the execution of State purposes, and, therefore, in the exercise of such powers and franchises, it is a *quasi*-private corporation.

The authorities recognizing the dual nature of municipal corporations proper are numerous.

*Lloyd v. Mayor, &c., of New York,* 5 N. Y., 369 ; *Holland v. San Francisco,* 7 Cal., 361, 376, 377 ; *Bailey v. The Mayor, &c., of New York,* 3 Hill, 531, 539 ; S. C. 2 Denio, 433, 442, 445, 450, 451 ; *Patterson v. Society, &c.,* 4 Zabr., 385, 393, 399 ; *Jones v. New Haven,* 34 Conn., 1, 9, 12 ; *Rochester White Lead Co. v. Rochester,* 3 N. Y., 463 ; *Rittenhouse v. Mayor, &c., of Baltimore,* 25 Md., 336, 346 ; *Western College, &c. v. City of Cleveland,* 12 Ohio, N. S., 375, 377 ; *Milhau v. Sharp,* 15 Barb., 193, 194, 212, 213 ; *Touchard v. Touchard,* 5 Cal., 306, 307 ; *City of Richmond v. Long's Adm's,* 17 Gratt., 375, 379 ; *Murtaugh v.*

*St. Louis*, 44 Mo., 479; *Hannon v. County of St. Louis*, 62 Mo., 313; *Small v. Danville*, 51 Me., 359; *County Commissioners v. Duckett*, 20 Md., 468; *Hewison v. City of New Haven*, 37 Conn., 475, 483, 484; *Maxmilian v. Mayor*, 62 N. Y., 160, 164; *Hill v. City of Boston*, 122 Mass., 344, 359; *Barnes v. Dist. of Columbia*, 91 U. S., 540, 552; *Cooley on Taxation*, 482; *Commissioners, &c. v. Lucas*, 3 Otto., 108, 115; *Read v. Plattsmouth*, 17 Otto., 568, 576.

The furnishing the citizens of Wilmington with water is not essentially either a franchise or a duty of the State sovereignty.

A number of persons might be incorporated for the purpose of constructing reservoirs, and furnishing and selling water to the citizens of Wilmington; yet such a corporation could no more be said to discharge a *public* duty, or to represent the State, than could the individual.

In either case the water supply would be a matter of private concern with respect to the State, as it could not involve the exercise of any exclusive power or franchise of the State sovereignty.

In the case of the corporation above supposed, the franchise is granted merely for the purpose of enabling the corporators and their successors, as an artificial, legal person, to do what the individuals would have the right under the general law of the State to do, without special legislative authority.

Any and all property acquired, held and owned by such individuals or corporation, for such purpose, would be their or its own private property.

That the Legislature has, instead of incorporating an independent company for the purpose of supplying the citizens of Wilmington with water, conferred upon the Mayor and Council of Wilmington such power, can make no difference in the nature of the franchise.

Therefore, with respect to the water supply and the property held and owned in connection therewith, the Mayor and Council of Wilmington is a *quasi*-private corporation.

*Bailey v. The Mayor, &c., of N. Y.*, 3 Hill, 531, 539, 543; *Western Saving Fund Society v. Philadelphia*, 31 Pa. St., 175; *Wheeler v. Philadelphia*, 77 Pa. St., 338; *City of Detroit v. Corey*, 9 Mich., 165, 184; *Gas Co. v. San Francisco*, 9 Cal., 453, 468;

*Norwich Gaslight Co. v. Norwich City Gas Co.,* 25 Conn., 19, 37; *Eastman v. Meredith,* 36 N. H., 284, 291, 295; *Darling v. Mayor, &c., of Baltimore,* 51 Md., 1, 12; *Aldrich v. Tripp,* 11 R. I., 141, 146; *Cooley's Constit. Lim.,* 253; *Dillon's Mun. Corp.,* 3d Ed., Sec. 58; *Cincinnati v. Cameron,* 33 Ohio St., 336, 367, 368; *Cooley on Taxation,* 482.

That the water supply is used in connection with the fire hydrants of the city does not remove from the Water Department, and the property connected therewith, their private character.

It might equally be objected that gas is used for the purpose of lighting the streets of a city, and that, therefore, the gas works are not its private property.

The property connected with the Water Department being the private property of the Mayor and Council of Wilmington, as a *quasi*-private corporation, had the Legislature the power to transfer the management and control of the same from the said corporation to a Board of Commissioners selected by itself?

It is not proposed in this argument, to dispute the proposition, that under the constitutional grant of legislative power in Delaware, the General Assembly is, in the absence of any express or implied constitutional restriction, clothed with plenary power for all purposes of civil government.

Nor is it claimed, that the Water Commission Act should be declared unconstitutional, merely because it may seem opposed to the spirit of the Constitution, or to violate what are generally held to be the fundamental principles of a republican form of government, or because it is unjust or tyrannical.

But is there not to be found some provision in the Constitution of the United States, or in that of this State, which will protect the Mayor and Council of Wilmington in its rights of property, and secure to it the enjoyment of the same?

If so, the Water Commission act clearly cannot be sustained as a valid exercise of the police power of the State.

That power is based upon the maxim, *sic utere tuo ut alienum non laedas,* and its legitimate exercise, save in cases of necessity, extends only to the regulation, and not to the prevention, of the use by the owner of his property.

4

*Cooley's Constit. Lim.*, *577 ; *People v. Jackson & Mich. Plank Road Co.*, 9 Mich., 307 ; quoted in text of *Cooley's Constit. Lim.*, *578.

The property connected with the Water Department is subject to the police power of the State to no greater extent than it would be, if owned and controlled by a private corporation or a natural person.

The prohibition in the U. S. Constitution against the passage of laws impairing the obligation of contracts applies as well to executed, as to executory contracts.

*Cooley's Constit., Lim.*, *275.

The Constitution of Delaware suffers no person to be deprived of his property, unless by the judgment of his peers or the law of the land ; and this constitutional safeguard equally protects artificial and natural persons.

The words " the law of the land " do not mean a statute passed for the purpose of working the wrong complained of, but are equivalent to the phrase " due process of law."

*Taylor v. Porter*, 4 Hill, 140 ; *Cooley's Constit., Lim.*, *353, *354, 351.

Vested rights of property, embracing not only the title to property, but also rights of enjoyment and control thereof, are within the protection of our State constitution.

" The legislative power extends only to the making of laws, and in its exercise it is limited and restrained by the paramount authority of the Federal and State constitutions.   It cannot directly reach the property or vested rights of the citizen by providing for their forfeiture or transfer to another, without trial and judgment in the courts ; for to do so would be the exercise of a power which belongs to another branch of the government, and is forbidden to the legislative."

*Newland v. Marsh*, 19 Ill., 382 ; *Cooley's Constit. Lim.*, *91.

" The right of every man to do what he will with his own, " not interfering with the reciprocal right of others, is accepted " among the fundamentals of our law."

*Cooley, Constit. Lim.*, *385.

It is submitted, that the Water Commission Act is forbidden

by both the Federal and State constitutions; but if not by both, certainly by the latter.

It is of the utmost importance to distinguish between the legislative power over the private franchises of a city on the one hand, and on the other over the rights of property acquired by the city in connection with the exercise of those franchises.

With respect to the latter, the corporation is protected in their enjoyment by the same constitutional guarantees which would protect a private corporation.

It has purchased and paid for a large amount of real and personal property, used in connection with the Water Department, and as to this property it has already been shown that the corporation is *quasi*-private.

It becomes important to distinguish between the power of the legislature over property acquired by the municipality to answer State ends, and property as to which the municipality is a *quasi*-private owner.

It might with some reason be claimed that property acquired by a municipal corporation proper, as a mere State agency, is acquired for and on behalf of the State, and is, therefore, subject to the absolute control and disposition of the legislature.

But the authorities do not go even to this extent.

*Cooley, Constit., Lim.,* *277.

There is no reason why the legislature should possess such control over the private property of a municipal corporation proper, during its existence.

The State of Delaware, in its sovereign capacity, has no business or concern with the property belonging to the Water Department.

That property was paid for by the citizens of Wilmington, and not by the State of Delaware.

It is used for the private purposes of the Mayor and Council of Wilmington, and was not acquired to answer State ends.

The inhabitants of the city enjoy the property, and the citizens elsewhere have no interest in it.

It is, therefore, property belonging to the city, in contradistinction to property belonging to the State, and the city cannot

constitutionally be deprived by the legislature of the use and enjoyment of it.

But against the will of a municipal corporation proper, to deprive it of the management and control of property belonging to its Water Department and vest the same in a board of officers appointed by the State, not under official bond or subject to the authority of the corporation, is a bald violation of its constitutional rights of property.

STORY, J. in the *Dartmouth College* case, says :

" In my judgment, it is perfectly clear that any act of a legislature which takes away any powers or franchises vested by its charter in a private corporation or its corporate officers, or which restrains or controls the legitimate exercise of them, or transfers them to other persons, without its assent, is a violation of the obligations of that charter."

*Dartmouth College Case*, 4 Wheat, 518, 712.

There is ample authority to show that the power of the legislature, even in the absence of any specific constitutional restriction, over the property, and especially the private property, of municipal corporations, is not unlimited ; and that constitutional guarantees, relating to the rights of private property, and the inviolability of contracts, are applicable to municipal corporations proper, in their relation to the State.

*Dartmouth College Case*, 4 Wheat., 518, 694; *2 Kent's Com.*, *275, *306, n. b., 309; *Town of Pawlet v. Clark*, 9 Cranch, *292, 336, 337; *Montpelier v. East Montpelier*, 29 Vt., 12; *Id. v. Id.*, 27 Vt., 704; *Poultney v. Wells*, 1 Aiken (Vt.), 180; *Regents of University v. Williams*, 9 Gill & J., 365; *Trustees, &c., v. Aberdeen*, 13 Sm. & Mar., 645, 646, 648; *Louisville v. University*, 15 B. Mon., 642, 667, 672, 676, 687; *Clinton v. Cedar, &c., R. R. Co.*, 24 Iowa, 455, 475, 476; *Bowdoinham v. Richmond*, 6 Greenl., 112; *Warren v. the Mayor of Lyons City*, 22 Iowa, 351; *Grogan v. San Francisco*, 18 Cal., 590, 612, 613, 614; *Mayor, &c., of Nashville v. Towns*, 5 Sneed, 186; *Aiken v. The Western R. R. Corporation*, 20 N. Y., 370; *State v. Springfield Township*, 6 Ind., 83; *County of Richmond v. County of Lawrence*, 12 Ill., 1,

8 ; *Benson v. The Mayor, &c., of New York,* 10 Barb., 223, 233,. 240, 244 ; *People v. The Mayor, &c., of New York,* 32 Barb., 102, 111, 115 ; *People v. Haws,* 37 Barb., 440, 453, 455 ; *People v. Batchellor,* 53 N. Y., 128, 138, 139, 140, 141, 142, 143, 144 ; *Sweet v. Hurlbert,* 51 Barb., 312 ; *Hampshire v. Franklin,* 16 Mass., 76 ; *Brunswick v. Lichfield,* 2 Greenl., 28, 33 ; *North Yarmouth v. Skillings,* 45 Me., 133 ; *Daniel v. Memphis,* 11 Humph., 582, 585 ; *Atkins v. Randolph,* 31 Vt., 226, 237, &c.; *Trustees, &c., v. Bradbury,* 11 Me., 118 ; *Hasbruck v. Milwaukee,* 13 Wis., 37, 46 ; *The Town of Milwaukee v. City of Milwaukee,* 12 Wis., 93, 99, 100, 101, 105, &c. ; *Mills v. Charlton,* 29 Wis., 400 ; *State of Wisconsin v. Haben,* 22 Wis., 660, 665, 666 ; *Cooley's Constit. Lim.,* \*238 ; *Cooley on Taxation,* 482, 483, 484, &c., 494 ; *Detroit v. Detroit & Howell P. R. Co.,* 43 Mich., 140 ; *Railroad Co. v. Ellerman,* 15 Otto., 166, 171, 173.

It may be noticed in passing, that the fact that the power of eminent domain may be brought into requisition for the purpose of enabling a municipal corporation proper to acquire real estate, to be used in connection with its Water Department, can no more stamp the corporation with a public character, with respect to matters relating to water supply, than the exercise of the same power in behalf of a railroad company could render it a public corporation.

*People v. Salem,* 20 Mich., 452 ; *Cooley's Constit., Lim.,* \*531, n. 1.

The doctrine of local self-government in local concerns will, upon investigation, furnish the test which will determine the extent of the legislative control over the purely local concerns of municipal corporations proper.

For the existing system of local self-government must be considered in construing the constitutional guarantees relating to rights of person and property.

*1 Mun. Corp.,* 3d Ed., § 9 ; *Cooley's Constit., Lim.,* \*189, \*190.

The doctrines of local self-government, so cherished by the Anglo-Saxon race, had their origin in the desire for the more enlarged exercise and protection of the rights of person and property, and have been fruitful in blessings to those who have been subject

to the system in its highest form of development—municipal corporations proper.

*Dillon, 1 Mun. Corp.*, 3d Ed., § 11.

Thus it has been held in many cases, that the legislature may compel a municipal corporation proper to assume the burden of improving the streets, constructing railways, which are now considered public highways, in which the people of the State at large are interested, and expending moneys for a variety of other purposes, public in their character.

*Cooley on Taxation*, 475–6–7.

But here the power of the legislature ends.

Hence the legislature has not the power to compel a municipal corporation proper to assume burdens for purposes relating only to the private concerns or interests of the corporation, and not connected with the ends of State sovereignty.

*Cases cited supra.    Dillon, 1 Mun. Corps.*, 34 Ed., §§ 73, 74.

Nor has the Legislature the power to take the control and management of any of the private property of such a corporation away from it against its will. while it continues to exist, and place it in charge of officers appointed by the State.

*Dartmouth College Case*, 4 Wheat, *578, *694, *712; *Atkins v. Randolph*, 31 Vt., 226 ; *Bailey v. The Mayor, &c., of New York*, 3 Hill, 531 ; *People v. Hurlbert*, 24 Mich., 44 ; *People v. Chicago*, 51 Ill., 17 ; *People v. Solomou*, 51 Ill., 37 ; *People v. Chicago*, 51 Ill., 58 ; *Attorney-General v. Lothrop*, 24 Mich., 235 ; *People v. Detroit*, 28 Mich., 228.

Were the law otherwise, the doctrine of local self-government in local concerns would have lost its vitality.

But there is another insuperable objection to the validity of the Water Commission Act.

As has been shown, the Act makes it the duty of the Water Commissioners, not only to " resolve upon a plan for the permanent water works best suited to the circumstances of the City of Wilmington," but also to acquire, by contract or otherwise, all such real estate as may be needed for that purpose.

It also requires the Mayor and Council of Wilmington to issue its bonds "for the purpose of defraying all the cost of acquiring real estate for reservoirs, laying pipe, purchasing and establishing engines, constructing all the works contemplated by this act, and purchasing water rights."

These provisions, upon the authorities cited, are clearly unconstitutional and void, as against the consent of the corporation; for they undertake to compel the corporation to assume burdens in relation to its purely private concerns, and to be bound by contracts, to which it is not to be a party.

Therefore, even were the other provisions of the act, considered by themselves, valid, the whole act must fall, as they are so mutually connected with, and dependent on, those which are unconstitutional and void "as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect, the legislature would not pass the residue independently."

*Cooley's Constit., Lim.*, 79; *Allen v. Louisiana*, 13 Otto., 80–83.

Prior to the passage of the Water Commission act, the charter of the Mayor and Council of Wilmington made it the duty of the corporation to appropriate annually a certain sum of money from the water rents for the redemption of the city bonds issued for the repayment of moneys borrowed on account of water supply.

The Water Commission act does not require any definite amount of money to be so appropriated; although a large class of citizens, who do not pay water rent, are interested in the making of such appropriation.

The provision of the act requiring the Mayor and Council of Wilmington, after having its private property wrested from it, to pay to the Board of Water Commissioners a large sum of money annually for the privilege of using a portion of it, viz: fire-hydrants, is, to say the least, adding insult to injury, and shows beyond all question the wholly independent character of the Board, with respect to the corporation.

A municipal corporation proper, when acting merely as an agency of the State sovereignty, is properly termed public, as it is in that capacity but a branch of the State government.

So a municipal corporation proper, when acting merely in relation to its own private and local concerns, may in a certain sense be termed public; for although a quasi-private corporation, clothed with a private character in its relation to the State, it is still public in relation to its own members.

*Cooley on Taxation*, 494, 71, 104, 105.

Finally, if the Board of Water Commissioners should be adjudged to be entitled to the control and management of the Water Department and the property connected therewith, then the singular spectacle would be presented of an irresponsible set of officers, under no official bond, and not subject to the control of the city of Wilmington, for the acts and defaults of whose employees the city would nevertheless be resposible.

*Bailey v. The Mayor, &c., of New York*, 3 Hill, 531; *S. C.*, 2 Denio, 433; *Cooley's Constit. Lim.*, \*249.

*Benjamin Nields*, for the plaintiff in error:

## THE ERECTION OF THE TOWN OF WILMINGTON INTO A BOROUGH.

Freeholders and inhabitants to elect by ballot—Burgesses to have powers of Justices of the Peace.

George Thomas, Esq., Lieutenant Governor of the counties of New Castle, Kent and Sussex, upon Delaware, and province of Pennsylvania, by Letters Patent, under the great seal of the said government, bearing date the 16th day of November, A. D. 1739, did erect the Town of Wilmington into a Borough, with privilege to the *freeholders and inhabitants* thereof annually to meet at the time and place in the said letters patent mentioned, and *elect by ballot* two able men, inhabitants of the said borough, to be Burgess, one to be High Constable, one to be Town Clerk and six to be assistants, for assisting the Burgesses in the management of the affairs of the said borough and for keeping the peace in the said borough, and did thereby grant and declare that the Burgess first chosen, or having a majority of votes should be called Chief Burgess of the said borough, and that the Burgesses so from time to time to be chosen, taking the qualification in the said letters patent

directed and enjoined were thereby authorized and empowered to be conservators of the peace within the said borough x to do and perform all and singular the matters and things within the said borough, as fully and effectually to all intents and purposes, as *Justices of the Peace* in their respective counties could or might lawfully do.

*Laws of Del.*, Vol. 1, p. 482.

An Act for the better regulation of public streets, party walls and laying the foundations of buildings in the borough of Wilmington, Passed June 13, 1772.

*Laws of Del.*, Vol. 1, p. 482.

## AN ACT FOR THE BETTER REGULATION OF THE BOROUGH OF WILMINGTON.

*Laws of Del.*, Vol. 3, p. 53, 1799.

Wells and pumps to become the property of the corporation, upon agreement with the owners.

SEC. 3. That the corporation of the said borough are hereby further empowered, when they shall think proper to agree with the owner or owners of all or any of such pump or pumps and wells as are already fixed in the streets and alleys of the said borough, which pump or pumps and wells, after such agreement made with the owner or owners thereof, shall forever after become the property of and belong to the said corporation; to be maintained and kept in repairs at the public charge.

## AN ACT TO ALTER AND RE-ESTABLISH THE CHARTER OF THE BOROUGH OF WILMINGTON, PASSED JANUARY 31, 1809.

*Laws of Del.*, Vol. 4, p. 275.

Prescribed who shall have the right to vote, &c.

The officers of the borough.

Powers of the corporation.

Borough council to constitute the legislative body.

See Act to incorporate the Wilmington Spring Water Company, passed January 23, 1804, Del. Laws, Vol. 3, p. 331.

CONSTITUTION OF THE STATE OF DELAWARE OF 1831.

*Art. 7. Sec. 8.* The rights, privileges, immunities and estates of religious societies and corporate bodies shall remain as if the Constitution of this State had not been altered.

*Art. 7. Sec. 9.* All the laws of this State existing at the time of making this Constitution and not inconsistent with it, shall remain in force unless they shall be altered by future law.

*Art. 3. Sec. 8.* He (the Governor) shall appoint all officers whose offices are established by this Constitution, or shall be established by law, and whose appointments are not herein otherwise provided for.

The same provisions are contained in the Constitution of 1792.

" A Corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence. These are such as are supposed best calculated to effect the object for which it was created. Among the most important are immortality, and if the expression may be allowed, individuality."

*Trustees of Dartmouth College v. Woodward,* 4 Wheaton, 518.

All Corporations are created in theory for the benefit of the general public,—for the public good.

*Trustees of Dartmouth College v. Woodward,* 4 Wheaton, 518.

The Legislature of a State may incorporate the inhabitants of a portion of its territory and confer upon them powers of local government; that is, power under and subject to the laws of the State to govern themselves and the property of a public kind, within such territory, by such rules and ordinances, as the Corporation may deem proper to enact.

Corporations of this character are *instruments* of the State, and are, such as counties, villages, towns, boroughs and cities. A portion of the power of the Legislature is delegated to them, to be exercised for the public, which power may, at any time, subject to constitutional limitation, be modified or taken away. Such corporations are public.

The legislature may also incorporate and confer upon individuals the right and power to construct canals, railways or turnpikes, or to supply a city, town or borough with light by electricity, or gas, or to supply a city, town or borough with ice, heat or water, whilst the powers thus granted are presumed to be for the benefit of the public and in consideration that the public will be benefitted by the exercise of them ; such corporations are private, and are in no respect public corporations. The corporators must apply for the charter ; accept its provisions when enacted by the Legislature, and act under it. It then becomes a contract between the State and corporation, and the powers conferred cannot be modified or taken away by the legislature without cause..

In private Corporations, such as have been spoken of, created for commercial or manufacturing purposes, the property and subjects over which it exercises its powers are usually called into existence after the Corporation is created.

In public or Municipal Corporations the act of incorporation does not change the character of the institutions, or transfer to the government any new power over them.

*Public* corporations may be empowered to take or hold private property for municipal uses, and such property is invested with the security of other private rights; so corporate franchises attached to public corporations are legal estates coupled with an interest, and are protected as private property.

*2 Kent,* 275–306.

A municipal corporation possesses two classes of powers, and *two* classes of *rights*—public and private. In all that relates to one class it is merely the agent of the State and subject to its control. In the other, it is the agent of the inhabitants of the place. The corporators maintain the character of individuals and is not subject to the absolute control of the legislature its creator. Among the latter class is the right to acquire, hold and dispose of property, to sue and be sued just as certain rights are conferred on private corporators and persons not *sui juris,* such as minors and married women, but are not, afterwards, as long as they exist under legislative control.

*1. Dillon, 3d Ed., on Corporations,* Sec. (39.) 56–67 ; *People v. Balchellor,* 53 N. Y., 128–138.

The Act of 1739 erecting the town of Wilmington into a borough and the several acts thereafter relating to it as a borough and afterwards as a city, conferred upon this Municipal Corporation, certain public powers among which were regulating and keeping in repair the public highways or streets; regulating the erection of buildings: of preserving the peace; protecting the lives health and property of the inhabitants; in levying and collecting taxes necessary to defray the expense of carrying out these objects, and in the exercise of these powers the corporation, acting through its officers, was simply the instrument, or agent of the State.

The legislative power over the persons and property within the city of Wilmington is absolute excepting wherein it is prohibited by the Constitution of the United States and limited by the Constitution of this State.

But the Legislature has power to confer upon the Corporation of Wilmington powers which are not governmental, powers which may be, and are, exercised by individuals and are in no way connected with the political government of the City. The Legislature might lawfully confer upon the Corporation of Wilmington the right to manufacture and sell gas, or to manufacture and sell any other commodity. To engage in Commerce or to supply the inhabitants of the City with coal, ice or water, and in the exercise of these powers the Corporation would be no more a State instrument than a natural person exercising the same powers would be. And herein lies the distinction between the Corporation acting as the Agent of the State for the purposes of the State, and its action as a private Corporation.

The Corporation of Wilmington is empowered to supply the citizens of Wilmington with good and wholesome water, and to assess and receive a tax therefor, and to lay water pipes in the streets and elsewhere in the City, for the purpose of conducting water into dwelling houses and other buildings in the City. The powers exercised by the City over the Water Works, are no more of a political power, or character, than are the powers exercised by the Wilmington Coal Gas Co. over their works, and in so far as the Corporation of Wilmington acts upon the subject matter of the Water Works, it acts no more for or in behalf of the State than does the Coal Gas Co.

*Bailey v. the Mayor, &c., of the City of New York*, 3 Hill, 531; *Western Savings Fund Society v. the City of Philadelphia*, 31 Penna. St. R., 185; *Board of Port Commissioners v. Common Council of Detroit*, 28 Mich., 228; *Small v. Danville*, 51 Me., 362; *Philadelphia v. Fox*, 64 Penna., 180; *Western College v. Cleveland*, 12 Ohio, N. S., 375; *San Francisco Gas Co. v. San Francisco*, 9 Cal., 458; *Oliver v. Worcester*, 102 Mass., 499; *1. Dillon on Municipal Corporation*, Sec. 39.

"A Municipal Corporation may own property to and over "which the Legislature has, while said Corporation exists, no right "or control in opposition to or independently of the will or con- "sent of the Corporation."

*New Orleans, &c., R. R. Co. v. City of New Orleans*, 26 La., 478; *Grogan v. San Francisco*, 18 Cal., 590; *Benson v. the Mayor, &c.*, 10 Barbour, 223; *Milwaukee v. Milwaukee*, 12 Wisconsin, 93; *Aldrich v. Tripp*, XI R. Island, 141; *Meriwether v. Garrett*, 102 U. S., 521; *U. S. v. Railroad Co.*, 17 Wall., p. 334.

THE ACT OF THE GENERAL ASSEMBLY CREATING A BOARD OF WATER COMMISSIONERS FOR THE CITY OF WILMINGTON IS UNCONSTITUTIONAL AND VOID.

The Act of the General Assembly, passed April 18, 1883, creating a Board of Water Commissions for the City of Wilmington, and appointing William T. Porter, Cæsar A. Rodney and Lewis Paynter, the members of said Board takes away from the officers constituted and appointed by the Corporation the entire control of all matters relating to water supply in the City of Wilmington, and the management and direction of the water works, now existing, or hereafter to be constructed in connection there- with, and all books, accounts, and property connected with the Water Department of said city, or any officer therein, and places the control thereof in the hands of the said commissioners ap- pointed, as above stated, by the Legislature of the State. By this Act the charter of the City of Wilmington is altered in a material respect, whereby private rights, and the control of private property of the Corporation are taken from it without its consent, and with-

out compensation; is an act impairing the obligation of the charter, and is unconstitutional and void.

The Governor shall appoint all officers whose offices are established by this Constitution, or shall be established by law, and whose appointments are not herein otherwise provided for; Art. 3, Sec. 8.

The right to acquire, hold and dispose of real and personal property for purposes not connected with the State is a contract. "It is a contract for the security and disposition of property." It is a contract on the faith of which, real and personal estate has been conveyed to the Corporation. It is, then, a contract within the letter of the Constitution, and within its spirit also.

*Dartmouth College v. Woodward*, 4 Wheaton, 518; *P., W. & B. R. R. Co., v. Bowers*, 4 Houston, 506.

Municipal powers may be changed by the Legislature, if vested rights, acquired thereunder, are saved.

*Blanding v. Barr*, 13 Col., 343; *Davidson v. Mayor of N. Y.*, 27 How. (N. Y.) Pr., 343.

The Legislature cannot divest a municipal corporation, without its consent, of property legally acquired by it.

*Mayor v. Steamboat Co.*, R. M. Charlt. (Ga.), 342; *People, et rel., Townsend v. Potter*, 26 Hun., 622; *Bolton v. Albertson*, 55 N. Y., 50.

The Water Works which the corporation of Wilmington has acquired and holds, consist of lands, water-rights, engines, water-pipes extending throughout the city, fire plugs, tools and other personal property, amounting in value to many thousands of dollars. The purpose of these works is to supply the citizens with good and wholesome water, but these Water Works are not public property; the public at large have no interest in them; the inhabitants of Wilmington have no right to the use of these works, or the use of the water without paying for it, any more than they have the right to the use of the gas of the Wilmington Coal Gas Co., or the use of the sand without paying for it, neither are the inhabitants required to use the water or to pay for it, if they do not use

it. They can obtain water from cisterns, wells or other sources if they choose to do so. The Corporation is therefore engaged in the business of selling water to such of the citizens as may choose to purchase it.

Municipal corporations are created solely for purposes of local government. They are depositories of a portion of the political power of the State, which they exercise not as a private franchise but as a public trust, as the mere agents or trustees of the Legislature, subject to its supervision and control. Such a charter is not in any proper sense a contract, *inter partes*, within the prohibitory clause of the Constitution. It is, therefore, revocable, and is subject to alteration at the pleasure of the Legislature, "*saving any private rights and interests which may have previously become vested under the action of the corporate body.*"

4 Houston, 506 ; *Bailey v. Railroad Co.*, 4 Harr., 389–396 ; *Weed v. Borough of Greenwich*, 45 Conn., 20 N. J., Eq., (5 C. E.) 350.

THE ACT FURTHER IMPAIRS THE OBLIGATION OF CONTRACTS BETWEEN THE CORPORATION OF THE CITY OF WILMINGTON AND THE HOLDERS OF CERTAIN BONDS ISSUED BY THE CITY OF WILMINGTON.

By an Act of the Legislature passed April 8, 1873, the Mayor and Council of Wilmington were authorized to borrow a sum of money not exceeding $200,000 to be applied for a new Water Reservior and for improving the Water Works of said City, &c., and Sec. 3 of said Act provides that " For the redemption of the debt contracted under said Act there should be a sinking fund of $6000.00 applied every year until the whole debt should be paid. To constitute said sinking fund the City Treasurer should set apart and appropriate to that purpose, $6000.00 that should come to his hands from the Water Rents for the year, until the sinking fund should be fully made up. Under this Act the City Council of Wilmington, by an ordinance passed July 30, 1874, authorized bonds to be issued to the aggregate amount of $200,000 and provided for their payment as set forth in said Act.

And by another Act passed March 1, 1875, the Mayor and Council were further authorized in like manner to borrow a sum of

money not exceeding in the aggregate $125,000 to be applied to the same objects and purposes, and this Act provides for the redemption of the debt by creating a sinking fund of $3,500.00, each year from water-rents for the year, until the whole of such debt should be paid from money that should come into the hands of the City Treasurer from water-rents for the year, and in default of such, then from any other funds of the City, in the treasury unapplied, and further provided that such fund should stand pledged and be applicable to the redemption of said funded debt, and should be used for no other purpose whatever.

And under this Act the City Council, by an ordinance passed May 7, 1875, authorized bonds to be issued to the aggregate amount of $125,000 and provided for their payment as set forth in said Act.

These Acts of the Legislature and ordinances provided, that the sinking fund thereby to be created from the water rents was to be the fund out of, and from which, these bonds were primarily to be paid. Such was the law at the time the bonds were issued and that law entered into, and necessarily formed a part of the contract.

" It is a rule in the construction of contracts that the law ex-
" isting when a contract is made enters into it and necessarily
" forms a part of it."

*Western Savings Fund Society v. City of Philadelphia,* 31 Penna., 175 ; *Bronson v. Kenzie,* 1 Howard, 628.

This Act no where requires, directs, authorizes or permits the Board of Water Commissioners to set apart and appropriate any part of the revenues derived from the Water Works for the purpose of creating a Sinking Fund to pay the Water Bonds as provided in the Acts and Ordinances, authorizing the City to issue them, and the Act takes from the City Treasurer the power to set apart and appropriate any of the revenue for that purpose. The fact that in the law authorizing the City to issue the Bonds, it is provided that if the Sinking Fund should fail by reason of insufficient money coming into the hands of the City Treasurer from water rents for the year, that then the Bonds should be paid from any other funds of the City in the Treasury unapplied, does not warrant the Legislature by a subsequent Act to take away such

Sinking Fund or to direct the application of money received from the Water Works to other purposes and in a different manner than as set forth in the Acts.

The Acts secured to the Bond-holders two funds out of which they were to be paid.

1. The Sinking Fund which was primarily the fund out of which they were to be paid.

2. Any other funds of the City in the Treasury unapplied which was in the alternative, conditional and uncertain.

The objection to a law, on the ground of its impairing the obligation of a contract, can never depend upon *the extent* of the change which the law effects in it. *Any* deviation from its terms, by postponing or accelerating the period of performance which it prescribes, imposing conditions not expressed in the contract, or dispensing with the performance of those which are, however minute or apparently immaterial in their effect upon the contract of the parties, impairs its obligation :—

*Green v. Biddle*, 8 Wheaton, 84; *Western Savings Fund Society v. City of Philadelphia*, 31 Pa., 175.

THE ACT INVADES THE RIGHTS OF THE CORPORATION SAVED AND SECURED TO IT BY THE CONSTITUTION OF 1792— AND 1831.

The town of Wilmington was erected into a borough and made a body politic with corporate powers, before any Constitution for the State of Delaware was adopted, and all of the rights, privileges, immunities and estates, of the corporation granted in the original charter of 1739, and in the amendment thereof by the Act of 1772, were secured and expressly saved by the 9th Section of the 8th Article of the Constitution of 1792. After the adoption of this Section of the Constitution, the Legislature had undoubtedly the power to enlarge, extend and add to the rights, privileges, immunities and estates of the Corporations, subsisting at the time the Constitution was adopted, but it did not, thereafter, have the power, to diminish, or take from the Corporation any of its franchises, for the reason, the Constitution provided that they should thereafter remain, as if the Constitution had not been altered.

And the Legislature did thereafter add to and increase and enlarge the rights, powers and privileges of the Corporation of Wilmington by the act of 1799 and the act of 1809.

By the act of 1809 all of the officers and agencies necessary to carry into effect the powers granted the corporation were provided for, and their duties defined. The executive power, under Section 10 of the act, was vested in the burgesses, who were constituted conservators of the peace and authorized and required to do all things in the borough, which *justices of the peace* for the said County of New Castle could lawfully do.

The Legislative power over the concerns of the corporation was, under Sec. 11 of the Act, vested in the Borough Council, as therein constituted, and the subjects over which the Borough Council was given power to legislate were enumerated. It had power to enact ordinances, among other things, to preserve health, prevent the introduction of infectious or contagious diseases, to define and remove nuisances; for draining docks and regulating wharves; to erect market houses, and to regulate markets, *to erect pumps or any other apparatus for supplying the citizens with good and wholesome water, to repair and amend the* same, and to assess and receive a tax therefor.

The rights, privileges, immunities and estates of the corporation of the City of Wilmington, which existed before, and at the time of the adoption of the amending Constitution of 1831, were:

1. *The right* of the free white male citizens of this State of the age of twenty-one years and upwards residing within the borough, assessed for and having paid a borough tax, to elect *annually by ballot* the Burgesses, *members of Council,*—the right of Corporation of Wilmington to elect its own officers.

2. *The right* of the Council, elected as aforesaid, to enact ordinances for the erection of pumps, or any other apparatus for supplying the citizens with good and wholesome water, to repair and amend the same and to assess and receive a tax therefor.

3. *The right* of said Burgesses, elected as aforesaid, to be conservators of the peace and to do and execute all things in the said borough, which Justices of the Peace for the County of New Castle might lawfully do.

With respect to the Water Works of the borough, there was:

*a. The right* in the Corporation to acquire and hold real and personal property necessary for the works.

*b. The right* of the Council to the control of all matters relating to the water supply and of the management of the Water Works.

*c. The right* of the qualified voters within the corporation to elect by ballot the agents who should have the control of the matters relating to the water supply and of the management of the Water Works.

These rights were subsisting and were being enjoyed by the qualified voters of the corporation and by the officers and agents elected as aforesaid by the qualified voters at the time of the adoption of the amended Constitution of 1831, and by the 8th section of the 7th article of that Constitution all " The rights, privileges, immunities and estates of religious societies and corporate bodies shall remain as if the Constitution of this State had not been altered." The Legislature was thereby prohibited from invading any of the rights, liberties and franchises lawfully held and enjoyed by the corporation of Wilmington at the time this Constitution was adopted. The right of corporation to elect the officers and agents who have charge of the Water Works *is a vested right* of the corporation.

*State v. Wilmington City Council,* 3 Harrington, p. 301.

The Legislature thereafter undoubtedly had the power to add to and enlarge the powers and rights of the corporation, but it did not thereafter have the power to invade or take from the corporation any of the rights, &c., which the Constitution provides should *remain.* The right that thereby remained, remained by virtue of that constitutional provision, and not by virtue of any previous legislative grant.

*Gray v. The State of Delaware,* 2 Harr. 76.

The Legislature has invaded the rights of the Corporation, by attempting to take from it the *control and management* of its private property, and placing the control and management thereof in the hands of agents appointed by the Legislature.

Therefore the Legislature has not the power to take from the City of Wilmington the control of its Water Works, the same

being private property, and place the same in the hands of agents appointed by the Legislature.

*Pumpelly v. Green Bay Company*, 13 Wall., 166; *Hooker v. New Haven and N. H. C.*, 14 Conn., 146.

*W. C. Spruance*, on same side.

*Ignatius C. Grubb*, for defendants in error:

Mandamus will lie to enforce the performance of a particular duty therein specified, which duty results from the official station of the party to whom the writ is directed, or from operation of law, where the law furnishes no other adequate specific remedy.

*High Ex. Rem.*, Sec. 1.

" By the Constitution of this State and the Statute law the Superior Court is invested with full power to award the writ to compel the performance of a *public* duty in *all* cases appropriate for its exercise."

*State ex rel. Ziba Ferris v. Knight et al.* (Delaware); *Comm'rs of Knox Co. v. Aspinwall*, 24 How., 383.

It is a general rule that mandamus lies to compel the transfer or delivery of the books, seals, records, papers and other *paraphernalia* pertaining to a *public office* to the person properly entitled to their custody, and the writ may even be extended to the case of public buildings pertaining to an office, and may require the surrender of such buildings to the person legally entitled thereto.

*High Ex. Rem.*, Sec. 73 and cases cited.

Whenever the term of an officer has expired he may be compelled by mandamus to turn over to his successor all records and books pertaining to his office to which the public are entitled to access.

*High*, Sec. 74 and note 3; *Rex v. Clapham*, 1 Wils., 305; *People v. Head*, 25 Ill., 325; *High*, Sec. 74 and note 5; *People v. Killduff*, 15 Ill., 492; *High*, Sec. 76 and note 5; *State v. Layton*, 4 Dutch., 244, 250, 254; *Burr v. Norton*, 25 Conn., 103, 113; *High*, Sec. 74; *People v. Head*, 25 Ill., 325; *High*, Sec. 75; *Crowell v. Lambert*, 10 Minn., 369.

Here the real question is whether the General Assembly has the power to appoint and authorize the Board of Water Commissioners at pleasure to terminate David H. Coyle's term of office

and appoint Henry B. McIntire in his stead, and to require Coyle
to surrender and deliver to McIntire the books, accounts and prop-
erty connected with the Water Deportment in obedience to their
direction, so that said Board may properly perform the duties im-
posed by law and the public have the benefits thereof.

The real issue is not whether Mr. Coyle has a title, but
whether the Board can require him—title or no title—to recognize
its authority and obey its directions under the Act of April 18,
1883.

Section 5 of said Act provides as follows:

1. That *all officers* of the Water Department shall be, from
its organization, under and subject to the *control* of said Board.

2. That their terms of office shall be subject to termination at
the pleasure of said Board.

3. That all books, accounts and property connected with the
Water Department of the City or any office therein, shall be used
and *disposed* of according to the *directions* of said Board.

Section 6 of said Act of April 18, 1883, provides as follows:

1. That said Board shall, at its discretion, appoint, employ
and discharge all officers, agents, ministers and servants, necessary
for the management and service of the Water Works, etc.

2. And make all needful rules and regulations for the observ-
ance of the officers, agents, ministers and servants by it employed,
etc.

*Del. Laws,* Vol. XVII, p. 410–11.

Under these two sections the Board have assumed to termi-
nate the official term of Chief Engineer Coyle, and to appoint H.
B. McIntire, Chief Engineer in his place and stead. Mr. McIntire
has accepted the appointment, been duly qualified for, and entered
upon his duties.

Pursuant to the legislative authority conferred by Sec. V, the
Board has directed Mr. Coyle to surrender the books, accounts and
property to Chief Engineer McIntire, and the latter has made of
the former a formal demand for the same, which he has refused to
comply with.

Section IV of the Act of April 18, 1883, gives the Board
" control of all matters relating to water supply in the City of
Wilmington, of the management and direction of the Water

Works now existing, or hereafter to be constructed in connection therewith, and charge and supervision of all the mains, stopcocks, fire hydrants and other fixtures appertaining to the distribution of water through the City," etc.

As Mandamus may be awarded to compel the performance of a public duty it may issue against Mr. Coyle in this case.

Mandamus will lie at the instance of the officers especially charged with a public duty and representing the public interests, for the enforcement of a public right.

*High Ex. Rem.*, Secs. 432, 33 and note citations; *Heffner v· Commrs.*, 28 Pa. St., 108, 114.

It will also lie upon application of even any citizen to enforce a public, as distinguished from a private, right.

*High Ex. Rem.*, Secs. 431–34 and notes.

A Board charged with enforcement of a public right and the performance of public duties may be relators in mandamus.

*State ex rel. v. City of Cincinnati*, 19 Ohio, 178; *State v. Heben*, 22 Wis., 660,; *Kimball v. Lamprey*, 19 N. H., 215, 221–22; *People v. Throop*, 12 Wendell, 183.

Where an alternative writ is necessary it may, in Delaware, be issued in a clear case presented by the petition (and without a preliminary rule to show cause.)

*Union Church v. Sanders*, 1 Houst., 134; *High Ex. Rem.*, Secs. 502, 3, 4.

A rule to show cause may properly take the place of the alternative writ, for the purpose of laying the foundation for granting a peremptory mandamus.

*High, Ex. Rem.*, Sec. 553; *State ex rel. Ferris v. Knight et al.* (Delaware.)

Where a plain imperative duty is incumbent by law, upon public officers, and the facts are not disputed, the court will not require the parties to go through the form of an alternative mandamus, where they have been notified and have had the opportunity to appear and be heard by counsel, and the Court is fully satisfied as to the *legal duty.*

*High, Ex. Rem.*, Sec. 552–553; *People v. Pearson*, 1 Scam., 458; *Commrs. of Knox Co. v. Aspinwall*, 24 How., 376, 385; *Exparte Rogers*, 7 Cowen, 546; *Exparte Goodill*, 14 Johns.,

325; *State v. Layton*, 4 Dutcher, 244, 250, 254; *State v. Mayor, etc.*, 6 Vroom. (N. J. L.), 196; *State ex. rel. Ferris v. Knight et al.* (Delaware); *Kimball et al. v. Lamprey*, 19 N. H., 221–22; *People v. Throop*, 12 Wend., 183; *People v. Brennan*, 39 Barb., 522, 539; *People v. Ass'ors of Barton*, 44 Barb., 148, 161.

Where, in disposing of the application upon the answer to the rule to show cause, the court regards the answer as a return to an alternative mandamus, the effect of moving for the peremptory writ upon the pleadings is to admit the truth of the matters of fact contained in the answer.

*High, Ex. Rem.*, Sec. 554; *Exparte Newman*, 14 Wallace, 166.

Where the return is in itself nothing more than a demurrer, and raises no questions of fact, but merely presents questions of law, no demurrer thereto is necessary. Thus, where the return traverses no fact alleged, and confesses none except the refusal of the respondent to perform the act required, and alleges in justification of his refusal the unconstitutionality of the law requiring its performance, the whole question involved is fully presented, either with or without a demurrer to the return. And in such case the court, upon being satisfied of the constitutionality of the law, will grant the peremptory mandamus.

*High, Extr. Rem.*, Sec. 492; *People v. Salomon*, 46 Ill., 336; *People v. Miner*, 46 Ill., 387.

Where the situation is serious and urgent the rule should be returnable at the earliest possible day.

*State ex. rel. Ferris v. Knight et al.* (Delaware.)

The said Act expressly declares and creates the "Board of Water Commissioners" to be an "agent" of the City of Wilmington, *i. e.*, a separate department and an integral and constituent part of the Corporation—as much so as the Mayor or City Council.

See Section I especially; also Sec. IV.

At the expiration of the term of each Commissioner appointed by said Act the Mayor shall appoint his successor for the term of six years, and biennially thereafter. Any member of said Board may be removed for cause by the Mayor with the concurrence of two-thirds of the whole City Council.

See Sec. II.

In the new City Charter passed April 13, 1883, to "revise

and consolidate the statutes relating to the City of Wilmington," the General Assembly expressly avoided conferring upon Council any power to supply water to the City and its inhabitants, by striking out the long existing provision therefor; by giving Council only such general powers "as shall not be in contravention of any existing laws of this State," (Sec. 31), and by repealing all acts or parts of acts manifestly superseded, etc., etc., by said Charter. (Vol. 17, p. 436, 492.)

This marked omission clearly was designed with the purpose of supplying it by the act of April 18, 1883, creating the Water Commission which was intended to supersede the previous control of the water supply by the Council.

The said act confers authority on the Board for two general purposes:

The first, to have the care and control of the *existing* City Water properties with a view to the *present* supply.

The second to *enlarge* and *extend* the present City Water properties with a view to the *future* supply of its people.

Even if (which is not conceded) the Act were in some parts *invalid* for constitutional or other reasons, and therefore inoperative or ineffective for the second purpose, it clearly is not so in respect to the first general purpose.

Therefore so much of it must stand and be executed.

*Bailey v. R. R. Co.*, 4 Harring., p. 404; *People v. Walsh*, 96 Ill., p. 254–5; *People v. Hurlburt*, 24 Mich., p. 73.

To be invalid, "an Act must be shown to be void in so many "or such important particulars that the main general purposes "could not be carried into effect without the aid of these objec- "tionable provisions."

*People v. Hurlburt*, 24 Mich., 73; *Cooley Constit. Lim.*, 5 Ed., pp. 201–15 (177.)

The City of Wilmington is a Municipal Corporation created by and existing under the legislative authority of the State. As such it is an instrumentality of the State to aid the State in the local government of that portion of its people. Its powers and duties are distributed and assigned by the legislature to be exercised as it has prescribed by the respective corporate agents designated or authorized by the General Assembly.

Thus the mayor is one of such agents; the Council another and the Board of Water Commissioners in question is also expressly, in the very first section of the Act under discussion, declared to be one of the corporate agents.

Certain powers and duties, heretofore exercised by the Council as the designated agent for the supply of water to the citizens, have been withdrawn from Council and transferred to the Board.

The Water Works and other property belonging to said corporation, for water supply purposes, have been procured by voluntary conveyance, or else through the exercise of the power of condemnation, to be paid for, in either case, wholly by money raised through the exercise of the taxing power. They have consequently been obtained exclusively for a public and not a private purpose, for the public benefit and not for private emolument. They are essential to preserve the public health without, by preventing epidemics within the City; and to prevent increased taxation beyond, by preserving from fire taxable property inside its limits.

Being so, the authority to procure, hold and manage the same was granted by the Legislative power for a public purpose not of merely local and municipal concern, but of general concern, as well to the people of the State outside, as inside the municipality.

The title to said property remains in the City and it is still to be used for its accustomed purpose. So that the act neither divests corporate property nor diverts its use. It merely transfers, not the property but its management from the control of one designated corporate agent and legislative instrumentality to that of another upon whom it confers all the power and imposes all the duties necessary to accomplish the purposes for which said property has been procured by the City.

Has the legislature the lawful authority to do this?

By the Revolution, the duties as well as the powers of government devolved on the people of Delaware.

It is admitted that among the latter was comprehended the transcendent power of Parliament.

*Dartmouth College v. Woodward*, 4 Wheaton, 651.

The legislative power of this State is vested in the General Assembly. (Section 1, Art. 2, Constitution of Delaware.)

The people of Delaware, after the Revolution, in framing their Constitution, committed to the General Assembly all the legislative powers which the Parliament of Great Britain had wielded, to be exercised subject only to such restrictions, expressed or implied, as were contained in said Constitution.

But from the time of the adoption of the Constitution of the United States, this power was to be exercised subject also to such limitations as might be imposed by that instrument.

Plenary power in the Legislature for *all purposes* of *civil government* is the rule. A prohibition to exercise a particular power is an exception. In inquiring, therefore, whether a given statute is constitutional, it is for those who question its validity to show that it is forbidden, either expressly, or by necessary implication; but independently of these restraints, expressed or implied, *every subject* within the scope of *civil government* is liable to be dealt with by the Legislature.

*Cooley Const. Lim.*, 5 Ed., pp. 105–108 (87–90), 206 (173.); *People v. Draper*, 15 N. Y., 532, 543; *Thorpe v. Rutland & Bur. R. R. Co.*, 27 Vt., 140, 142; *Wynehamer v. People*, 13 N. Y., 378, 391; *Dartmouth College v. Woodward*, 4 Wheaton, 651.

Hence, subject to such constitutional restraints, the power of the General Assembly is supreme for all purposes of civil government, and it may make such provision, from time to time, as, according to its own judgment, will best serve the public interest, convenience and necessity, and promote and protect the general welfare.

If this power be supreme over all the people of the entire State of Delaware, it must be equally so, since the greater includes the less, over that portion of the people residing in any particular locality thereof.

In the absence of Federal or State constitutional restriction, the Legislature, at its mere will and pleasure, without the consent, and even against the will of the Municipal Corporation, may create or destroy its entire corporate existence and all its corporate agencies, and may also enlarge, diminish or transfer all its civil, political or governmental powers; which legislative authority necessarily includes and implies the power to substitute new or

other corporate agents to discharge the powers and duties formerly exercised by others.

*Dillon Mun. Cor.*, Sec. 37, [17]-27-44 [23]-45 [24]; *Dillon Mun. Cor.*, Sec. 54-[30] note 2, 64 (37) 65, 66; *Dillon Mun. Cor.*, 3d Ed., Sec. 67, note 2, 68, *Cooley Const., Lim.*, 5 Ed., 140, 229-32, 334; *Darlington v. Mayor of New York*, 31 N. Y., 164, *U. S. v. Railroad Co.*, 17 Wall., 328-9; *Barnes v. Dist. of Columbia*, 91 U. S., 540, 544, 545-6; *Mt. Pleasant v. Beckwith*, 100 U. S., 514, 529, 531-2-3-4; *Meriwether v. Garrett*, [Memphis Case] 102 U. S., 472, 503-4-5-6, 511; *Struthers v. Phila.*, 4 Weekly Notes Cases, 379; *People v. Hurlburt*, 24 Mich., pp. 67, 69-70, per Christiancy J.; *People v. Hurlburt*, 24 Mich., pp. 84, 111; *People v. Morris*, 13 Wend., 329, 333; *Philadelphia v. Fox*, 64 Pa. St., 169, 180, 182-3; *New Orleans v. Morris*, 105 U. S., 600, 602, 603; *Comco v. Thompson*, 81 Pa., St. 314.

Municipal property is subject to legislative control and authority, especially where purchased with money raised by taxation. (Though it has been, in some instances, held that it may not be destroyed, or divested or diverted to other than uses of the corporation, or those for which it was obtained.)

*Dillon, M. Corp.*, Sec. 66, 67, 68, (40) (Notes Sec. 68); *Darlington v. Mayor*, 31 N. Y., p. 164, 193, 205; *Commissioners, &c. v. Lucas*, 93 U. S., 114-15; *People v. Hurlburt*, 24 Mich., 79, 105; *Cooley Const. Lim.*, 5th Ed., p. 292-95, (238).

Water Works property is a public necessity and is held for a public and not private use, by a city.

*New Orleans v. Morris*, 105 U. S., 600, 602, 3; *Darlington v. Mayor of New York*, 31 N. Y., p. 204; *Foster v. Fowler*, 60 Pa., St. p. 27, 31-32; *Dillon M. Corp.*, Sec. 73.

Public property and subordinate rights of a Municipal Corporation are within the control of the legislature.

*Mt. Pleasant v. Beckwith*, 100 U. S., 532; *Meriwether v. Garrett*, 102 U. S., 513.

Water Works property, like other public property of the corporation, especially when procured by the exercise of the power of taxation or condemnation, and the power to hold and control it, are taken subject to the obligation that it shall be used so as best to accomplish the object of the legislative grant of such power, and

subject to being regulated, withdrawn or transferred in the discretion and at the pleasure of the legislative power.

*Dartmouth College Case,* 4 Wheaton, 660-62 ; *Comm'rs, &c. v. Lucas,* 93 U. S., 114, 15 ; *Meriwether v. Garrett,* 102 U. S., 511.

" Grants of immunity from legitimate governmental control are never to be presumed. The presumptions are all the other way," Per Chief Justice Waite,     *Ruggles v. People Cent. L. J.,* Vol. 16, No. 24, p. 667, U. S. Sup. Court.

The Wilmington Water Works and other property and appurtenances connected with the Water Department of the City, are public property procured by money received by means of taxation.

Taxation is not lawful for any purpose not public.

*Cooley Con. Lim.,* 5th Ed., 209 (175), and 627 (531.)

The first grant to Wilmington of power to provide for the water supply and the *present* water works system, was by Act of 1809, and therefore *since the Revolution.* Wherefore the Corporation accepted the power to be exercised by the Council, subject to the legislative will according to the American doctrine, and, therefore, to the condition that it might be regulated, withdrawn and transferred at pleasure by the Legislature.

*Dillon M. Corp.,* 3d Ed., Sec. 37 (17), 65 ; *Dartmouth College Case,* 4 Wheaton, 651, 661 ; *Mt. Pleasant v. Beckwith,* 100 U. S., 531 ; *Meriwether v. Garrett,* 102 U. S., 511 ; *Commissioners, &c., v. Lucas,* 93 U. S., 114–15 ; *Phila. v. Fox,* 64 Pa. St., 182–3 ; *Mt. Pleasant v. Beckwith,* 100 U. S., 533.

### CONSTITUTIONAL LIMITATIONS.

We fail to discover any in the Federal Constitution and find none in the State, though it be claimed to exist in the following clause of Sec. 8, Article VII, of our Constitution :

" The rights, privileges, immunities and estates of religious societies and corporate bodies shall remain as if the constitution of this State had not been altered."

This saving or reservation of corporate rights, &c., was first embodied in our State Constitution of 1792, and still is continued in our Constitution of 1831, which went into effect in January, 1832.

Prior to our Constitution of 1792, no power had been conferred upon the Corporation of Wilmington to provide any water supply.

In 1799 power was given to the Borough Corporation " to maintain and keep in repair pumps and wells at the *public charge,*" for " *use* and *service* in extinguishing *fires* which may happen within the said Borough."

*Del. Laws,* Vol. 3, p. 54–5.

In 1809 the first authority was given to the corporation, providing that Council may pass ordinances to erect pumps or any other apparatus, for supplying the citizens with good and wholesome water, to repair and amend the same, and to *assess* and *receive a tax therefor.* Vol. 4, Chap. 97, Sec. 11, p. 280.

This power was continued in a general clause (Sec. 8,) of the Charter of 1832 (Vol. 8, Chap. 108, p. 99), which changed the Borough to the City of Wilmington ; and was continued (with the insertion of the words " purchase or " between " to " and " erect,") in the precise words of the Act of 1809, in the Charter of 1852, Chap. 73, Sec. 27, Am. Code, 415.

There it remained until April 13, 1883, when the "Act to revise and consolidate the statutes relating to the City of Wilmington " was passed. Vol. XVII, p. 424.

This act was presented to the General Assembly, by direction of the City Council, with the precise words of the Charter of 1852, relating to the water supply, incorporated in it. This provision was stricken out by the General Assembly, and the Act passed without making therein any provision for the water supply of the City. This Act has been accepted and acted upon by the City Council as the Revised Charter of the City.

On April 18, 1883, the " Act to establish a Board of Water Commissioners for the City of Wilmington and for other purposes " was passed (Vol. XVII, p. 408), which has given rise to the present contention.

From the foregoing it will appear that, prior to the American Revolution, no right, privilege, or franchise to supply Wilmington with water had belonged to that corporation or any of its corporate agencies.

From the Revolution, as heretofore shown, the American doctrine has certainly existed in this, as well as other States, that the Legislature has authority to create or abolish, alter, modify, enlarge, restrict or control corporate powers, agents, duties, &c.

*Dillon Mun. Corp.*, 3d Ed., Sec. 65; *Dartmouth College Case*, 4 Wheaton, 651; *Mt. Pleasant v. Beckwith*, 100 U. S., 531; *Meriwether v. Garrett*, 102 U. S., 511.

As the Wilmington corporate power, &c., *to supply water* has been conferred *since the Revolution*, it has been granted to, and accepted by the corporation and its inhabitants, subject to this legislative authority and control, as already stated.

Hence there was no right to hold this power or privilege of providing the water supply (especially by the agency of Council), free of legislative control and authority, *to be saved* and protected by said constitutional provision. Therefore it cannot rightly be claimed as a constitutional restraint upon the general authority of the Legislature over the corporation, or Council of Wilmington, in the present instance.

But it is insisted, on behalf of the plaintiff in error, that certain provisions of said Water Commission Act give said Board the power, in their execution of said Act, to detriment the rights of the holders of City Water Bonds—the redemption of which, when issued, had been secured by the sinking fund provisions of certain Acts setting apart each and every year specific sums of money that should be received from "water rents"—by diverting said sums therefrom, and thereby to violate the provisions of Sec. 10, Art. 1, of the Federal Constitution, which forbids the State to "pass any law impairing the obligation of contracts."

It is a sufficient answer to this objection, in the present proceeding, that it is not urged by, or at the instance of any of said Water Bond creditors. This Court, therefore, will not now pass upon this question. *Cooley Constit. Lim.*, 5th Ed., 196 (163.)

It cannot be correctly claimed that the appointment of the Water Commissioners by the Legislature was unconstitutional, or otherwise invalid, because they should have been appointed by the Governor, or elected by the people of Wilmington, or by their local representatives the Council of said city.

Our State Constitution provides that the Governor "shall appoint all officers whose offices are established by this Constitution, or shall be established by law, and whose appointments are not herein otherwise provided for."

*Del. Const.*, Art. 3, Sec. 8.

But this provision does not apply to corporate officers.

*State v. Wil. City Council,* 3 Harring., 300, 302-3.

The Board of Water Commissioners are corporate officers. Indeed they are, by the Water Commission Act, expressly declared to be agents of the municipality.

Secs. 1 and 4 of Act of April 18, 1883, Vol. XVII. *Del. Laws,* pp. 408, 410; *Dillon Mun. Corp.,* 3d Ed. Sec. 58 (33); *Barnes v. Dist. Columbia,* 91, U. S., 540; *People v. Hurlburt,* 24 Mich., 69-70.

In the absence of Constitutional limitations, the power of the Legislature over municipal officers is complete.

*Dillon Mun. Corp.,* Sec. 229, (168); *Cooley Const. Lim.,* 5 Ed. p. 334, (277) and note 2.

The appointment cannot be claimed in this instance to be inhibited by Constitutional implication because it is an assumption of an *executive,* instead of a legislative function, and therefore invalid.

*People v. Hurlburt,* 24 Mich., 63; *Cooley Const., Lim.* (5 Ed.) p. 136, and notes; *State v. Wil. City Council,* 3 Harrington, 300, 302-3.

Municipal Boards have frequently been appointed by the Legislature.

*Baltimore v. Board of Police,* 15 Md., 376; *Baird v. Rice, et. al.,* 63 Pa. St., 494; *People v. Walsh,* 96 Ill., 234; *Hudson Co. v. Seymour,* 6 *Vroom,* 35 N. J. L., 47; *People v. Mahoney,* 13 Mich., 492; *Phila. v. Fox,* 64 Pa. St., 170.

But it is claimed that these authorities are not properly applicable, or authoritative in the present case, because there is a supposed distinction between Municipal police, and the like, and Park and Water Commissioners, and similar Municipal officers.

It is urged that the former perform governmental duties pertaining to the preservation of the public peace, the administration of justice, and the like, which are essentially matters of public and State concern, and are therefore *State* officers, while the latter perform duties which are purely local, and consequently are merely Municipal officers; and hence that, while the former may be appointed by the State, the latter class may not.

This distinction was adopted in Michigan, and other States similarly situated, which had peculiar Constitutional provisions

restraining the Legislature thereof from appointing those Corporate officers whose duties were purely local and Municipal, in order to bring such within the operation of such provisions by distinguishing them from other Corporate officers whose duties were of more general and public concern, and therefore might be appointed by the Legislature in any such State.

But no such provisions exist in the Constitution of Delaware, and therefore the distinction is unnecessary, as it is inapplicable in this State.

Since the entire corporation is subject to the will and power of the Legislature, so must any of its constituents parts be, and consequently these may be created, appointed, controlled, or superseded in the discretion, and at the will and pleasure of the Legislature.

*Barnes v. Dist. Columbia*, 91 U. S., 540, 544-5.

Whether their powers and duties be purely local and municipal, or of more general and State concern, there is no restraint upon this power of the Legislature unless it be found in some clearly *implied* limitation of it, for none is *expressed* in the State Constitution.

Such implication must be clear and convincing to the Court. A reasonable doubt must be solved in favor of the Legislative action, and the act sustained.

*Cooley Const. Lim.*, 5 Ed., 218, (182-3).

But it has been asserted that an indefeasible right of the municipality of Wilmington to elect or appoint for itself all its corporate officers is recognized, and guaranteed as forever inviolable, by the following provision, heretofore quoted, of Sec. 8, Art. VII, of our State Constitution.

"The rights, privileges, immunities and estates of religious societies and corporate bodies shall remain as if the constitution of this State had not been altered."

And hence that *this provision* is an *implied* constitutional restraint upon the power of the Legislature to appoint the members of said Board.

This proposition cannot be successfully maintained.

The said clause was neither a creative, nor a declaratory provision, but merely a precautionary one. It originated no new

rights, etc., nor did it confirm any doubtful ones. It simply saved, in the transition of government from the old to the new constitution, such only as had thereunto actually existed. This clause was not in our constitution of 1776. It first appeared in that of 1792.

No indefeasible right to elect or appoint its own local officers has ever belonged to the municipality of Wilmington. It is true that authority to appoint or elect such officers was conferred by the Crown Charter of 1739, and recognized by the Colonial Statute of June 13, 1772.

But prior to the Revolution, that provision of the Crown Charter, as well as the entire charter itself, could have been revoked and annulled by the Parliament of Great Britain. By the Revolution, as already shown, this, among other powers of Parliament, devolved on the people of Delaware, who have confided it to our General Assembly.

By virtue of Art. 24 of our Constitution of 1776, the said Statute of 1772, and all other acts relating to the Corporation of Wilmington, were merely continued in force *until* altered or repealed by the Legislature of this State.

Vol. 1, *Del. Laws*, Supplement, p. 89 ; *Dartmouth College v. Woodward*, 4 Wheaton, 651.

The right of Wilmington, therefore, after the Revolution, was to have its Charter Rights, etc., of election *only until* the Legislature should see fit to alter or repeal the same. This, then, was, and is, the real nature and extent of the rights, etc., intended to be saved by said Constitutional reservation. Consequently there never has been any such indefeasible or irrepealable right of election, etc., belonging to Wilmington ; nor, therefore, any implied Constitutional restraint upon the power of the Legislature to appoint any of its corporate officers and agents.

But even if it could be shown (which is denied) that any such indefeasible right of election, etc., did exist at the adoption of our State Constitution of 1792, it is contended that, so far as concerned officers of the Corporation of Wilmington, their election, or appointment, and rights, powers and duties, the provisions of the Charter of 1739, and of the Act of 1772, and all other Acts relating thereto, were surrendered and superseded by the Corporate

acceptance of the Act of January 31, 1809, and as well by that of the City Charter of 1852.

See Secs. 1, 3, 4, 6, 9, 13, 24, 25, 27, Act of 1809; Vol. 4, *Del. Laws*, 275, 288; Charter of 1852, Secs. 101, 102, *Am. Code*, 444–5.

As every municipal charter granted subsequent to the Revolution is accepted subject to the American doctrine of the absolute power of the Legislature to alter or repeal the same, the election or appointment of the local officers and agents of the corporation of Wilmington, since its acceptance of the said Charters of 1809 and 1852, must now be subject to the absolute power of the Legislature either to appoint them itself or make such other provision respecting them as in its judgment may seem proper.

The foregoing, it is submitted, effectually disposes of any inference to the contrary from the *obiter dictum* of 'Harrington, J. in *Gray v. State*, 2 Harring., 93.

It is contended that the appointment of the members of said Board by the Legislature is invalid :

Because there is, *even in the absence of any* constitutional provision on the subject, " a fundamental right of local self-government " entitling the people of every municipality to elect or appoint their local corporate officers and agencies, whose duties are purely *municipal*, in view of and subject to which all State constitutions are framed, and which, therefore, by *implication*, inhibits the appointment of such officers by the Legislative power.

Such a doctrine is not affirmed, but negatived by the judicial decisions, rendered without this State, which should be accepted as authoritative here.

*Barnes v. Dis'ct of Co,.,* 91 U. S., 545–6; *Cooley Const. Lim.,* pp. 203–4, 209.

Where the right of local self-government in Corporations, has been affirmed, it will be found to be so by reason of express Constitutional provisions, manifestly showing it to be the policy and design of those who framed the Constitution and system of government of such States, to secure this right and prohibit its violation by the legislative power.

*Dillon Mun. Corp.,* 3d Ed., Sec. 58, (33); *People v. Hurlburt,* 24 Mich., 44, 67, 86-7, 89-90, 109-110; *Struthers v. Phila,,* 4

Weekly Notes of Cases, p. 379 ; *People v. Mayor Chicago*, 51 Ill., 17 [2 Am. Rep. 278].

According to *State v. City Council of Wilmington*, 3 Harrington, 300, 302-3, our Constitution does not have reference to Corporation, but only to State officers.

This view of our State Court was also held by the Supreme Court of Pa. in case of *Commew v. Alex. J. Dallas*, reported in 3 *Yeates* 300 (*also* 4 *Dallas* 229). Since Pennsylvania and Delaware were united in their early history, and their policy and polity were therefore originally identical and similar, this Dallas case is of especial application and authority here on the point now under consideration.

The doctrine of 3 *Harr.* and 3 *Yeates* would therefore seem conclusively to show that, as the Conventions which framed our Constitution and system of government, *did not intend* that these should have any reference to Corporate officers, they could not, therefore, have framed these *in view of* and subject to this "fundamental right of local self government" which, it is claimed belongs to every Municipal Corporation.

Therefore, if such limitation exists at all, it must be by reason of some "higher law" doctrine of the right of local self-government in Municipal Corporations, which is to be found outside of our Constitution and of the design (as has been already adjudicated here) of the people of this State, who by their representatives in convention, framed it.

This "higher law" doctrine does not exist as to municipal corporations, according to the most authoritative decisions outside the State.

*Barnes v. Dist. Columbia*, 91 U. S., 545-6 ; *Phila. v. Fox*, 64 Pa. St., 181 ; see also *Cooley Const., Lim.*, 108, (89) 203-4 (169-70).

Nor does it exist in Delaware.

*State v. Allmond*, 2 Houst., 612, 23, 31, 34, 639, 640.

The restraints upon legislative power in Delaware are to be found only as expressed, or necessarily implied, in the State Constitution itself, or in the Federal Constitution.

*State v. Allmond*, 2 Houst., 612, 631.

If the legislative power is exercised unwisely or unjustly, it is for the people themselves to correct the evil through legislative

repeal, or constitutional amendment, and not by judicial usurpation. Id., p. 634; *Cooley Const., Lim.*, 5 Ed., p. 229-32, (191).

*George H. Bates* and *George Gray*, on same side.

SAULSBURY, Chancellor (Opinion of Court):

On the 18th day of April, 1883, the General Assembly passed an act to establish a board of water commissioners for the city of Wilmington and for other purposes.

The act authorizes the city of Wilmington, through the agency of the board of water commissioners thereby created, constituted and appointed, and their successors in office, to take, convey into, and throughout said city the water of the Brandywine river from any point on said river or other wholesome water, and also to acquire and hold lands, real estate or personal property necessary for constructing acqueducts, lay pipe, constructing reservoirs, erecting buildings and machinery proper for the said works, and for purifying, conducting, storing and distributing such water and to purchase, take and hold lands and water rights, for supplying the citizens with good and wholesome water.

Three citizens of Wilmington were appointed and constituted a board of water commissioners for the said city under the act. Their terms of appointment were limited to two, four and six years.

At the expiration of the term of the said commissioner who should draw the shortest term and biennially thereafter the place of the retiring commissioner was to be filled by appointment by the mayor of the city of Wilmington for the term of six years. The said board of water commissioners was to have control of all matters relating to water supply in the city of Wilmington, of the management and direction of the water works then existing or thereafter to be constructed in connection therewith ; to have charge and supervision of all mains, stop cocks and fire hydrants and other fixtures appertaining to the distribution of water through the city and of the collection of all revenues due, or to become due to the city of Wilmington for water, or accruing to the said city on account of the water works thereof, in virtue of any ordinance then existing; or of any rules and regulations thereafter to be passed by said board.

The ordinances of said city then in force relating thereto were to continue in force until the same should be changed in whole, or in part by the said board of commissioners. And all officers of the water department of said city were to be from the time of the organization of said board of commissioners under and subject to the control of the said board. And the terms of office of all the said officers were by the said act made subject to termination at the pleasure of said board, all such officers were to continue to perform the duties then devolved upon them by the ordinances of said city until the board should otherwise direct; and all books, accounts and property connected with the water department of said city or any office therein were to be used and disposed of according to the directions of said board.

The said board of water commissioners were by said act authorized at its discretion to appoint, employ and discharge all officers, agents, ministers and servants necessary for the management and service of the water works and for the collection of the revenues arising therefrom as the said act provided.

The said board were with all dispatch to prepare and resolve upon a plan for the permanent water works, best suited to the circumstances of the city of Wilmington, capable of affording an ample daily supply for the inhabitants of the city ; and to acquire for the city of Wilmington by contract, or otherwise as in said act provided, all such real estate as might be needed for the construction of such extended water works; the title of any real estate so purchased to be vested in the mayor and Council of the city of Wilmington.

The said board of water commissioners were to have the right to charge the city of Wilmington with all water furnished each fire hydrant at the rate of $40 per annum or the city was in lieu thereof to pay to the water commissioners a sum of money as might be agreed upon by the City Council and said board, provided that in no case should the city pay less than $20,000 per annum.

For the purpose of defraying all the cost of acquiring real estate for reservoirs, laying pipe, purchasing engines, constructing all the works contemplated by the act and purchasing water rights it was made the duty of the city of Wilmington on the requisition of said board of water commissioners to issue bonds, each for the

sum of $100, or multiples of one hundred, payable in not more than 35 years from date of issue, to be denominated Wilmington city bonds to an amount not exceeding $120,000, bearing interest not exceeding $5\frac{1}{2}$ per cent. per annum, which bonds the board of water commissioners might sell and dispose on the most advantageous terms possible.

The proceeds of the sale of all such bonds and also the revenue derived from the water works were to be received by said board of water commissioners and placed on deposit in such bank at Wilmington as should from time to time be the depository of the funds of the city to the credit of said board, and all money to be disbursed thereon on account of said water works was to be drawn upon warrant signed by the president of said board, and countersigned by the city treasurer and city auditor.

The water rates were required to be fixed by the said board of water commissioners at prices that should produce revenue sufficient at least to pay the interest on the water bonds and the running expenses of the water works, and the whole net income, rents and receipts of said water works in excess of what might be necessary for completing, constructing, operating and repairing the water works, for extending the water pipes and for interest on water bonds were to be set apart by the said board and solely appropriated to and for the payment of the principal and interest of the water bonds, and should be applied solely to that purpose until the whole of said bonds should be fully paid.

The City Council were required during the month of December in each and every year to notify the board of water commissioners of the amount of interest due and payable during the ensuing year on all loans created for the benefit of the water works, stating the time when due and the amount of interest payable, and the board of water commissioners were required to pay to the city the amount of interest due in each year, such payment to be made at least ten days before said interest was payable to the holders of any water loans.

The present controversy results from the passage of this act by the Legislature.

It is unnecessary to review the history of the legislation of the State conferring upon the corporation of Wilmington authority

in relation to the supply of water to that city. Such legislation seems to have commenced in 1799 and to have continued from time to time to the present.

Water works existed in the city of Wilmington prior to and at the time of the passage of the act referred to as being the occasion of the origin of these proceedings.

These water works belonged to and were under the control of the corporation. David H. Coyle, the plaintiff in error, was chief engineer of said works by appointment of the proper authorities at the time of the passage of the act to establish a water commission. The commission appointed by the act having qualified for the discharge of their duties as commissioners thereunder removed the said Coyle as such chief engineer and appointed Henry B. McIntire, the defendant in error, in his place and stead. Coyle refused to surrender his office as chief engineer and the property connected therewith to said McIntire in accordance with demand made upon him under the resolution adopted by the commissioners and thereupon the attorney-general of the State on the relation of Henry B. McIntire filed an information in the nature of a *quo-warranto* in the Superior Court in and for New Castle county, against him.

Judgment against the defendant was by agreement entered in the court below and a writ of error thereon sued out to this court.

The cause was very fully argued at the present term and it now becomes our duty to decide as to the rights of the parties to the proceeding.

While we have carefully examined all the authorities cited to us by counsel on both sides and maturely considered the positions assumed by each, we deem it unnecessary to review at length those cases, but shall confine ourselves to the consideration of such general principles as we consider necessarily involved in the determination of the cause and properly deducible from the authorities applicable thereto.

The plaintiff in error contends that the act of the Legislature to establish a board of water commissioners is unconstitutional and void. His counsel in their very able argument maintained in substance that a municipal corporation is of a dual character, and possesses two classes of powers and two classes of rights, public and private. That in all that relates to one class it is merely the

agent of the State and subject to its control, and that in the other it is the agent of the inhabitants of the place, and not subject to the absolute control of the Legislature, its creator.    That among the latter is the right to acquire, hold and dispose of property to sue and be sued. just as certain rights are conferred upon private corporators and persons not *sui juris* such as minors and married women, but are not afterwards as long as they exist under legislative control.

They maintain in effect that the act is unconstitutional as being repugnant to that provision of the constitution of this State which provides that no man shall be deprived of his property except by due process of law.    They contend that what they say is the private property of a public corporation is held by such corporation under all the constitutional guarantees as similar property would be protected by in the hands of individual owners and properties, and this protection exempts a public corporation as to its water works from the regulation and control of the State as effectually as against trespass and wrong committed by individuals.

This is in effect the position of the plaintiff in error.

The questions involved in this case necessarily lead to the consideration of the nature, character and powers of corporations, private and public.

A corporation is a legal institution devised to confer upon the individuals of which it is composed powers, privileges and immunities which they would not otherwise possess, the most important of which are continuous legal identity, and perpetual or indefinite succession under the corporate name, notwithstanding successive changes by death or otherwise in the corporations or members of the corporation.

It is a legal person with a special name composed of such members and endorsed with such powers and such only as the law prescribes.    Dillon on Mun. Corp. 25.

It is an artificial being, invisible, intangible and existing only in contemplation of law.    Dartmouth College case.

Being the mere creature of the law it possesses only those properties which the charter of its creation confers upon it either expressly or as incidental to its very existence.    These are such as

are supposed to be best calculated to effect the object for which it is created.

Corporations are of two kinds, public and private. " Private corporations," says Cooley, " are created for private as distinguished from purely public purposes, and they are not in contemplation of law public, because it may have been supposed by the Legislature that their establishment would promote either directly or consequentially the public interest. They cannot be compelled to accept a charter or incorporating act. The assent of the corporation is necessary to make the incorporating statute operative, but when assented to, the legislative grant is irrevocable, and it cannot without the consent of the corporation be impaired or be destroyed by any subsequent act of legislation, unless the right to do so, was reserved at the time."

By the 19th section of the second article of the constitution of this State, it is declared that " no act of incorporation, except for the renewal of existing corporations, shall be hereafter enacted without the concurrence by two-thirds of each branch of the Legislature, and with a reserved power of revocation by the Legislature; and no act of incorparation which may hereafter be enacted, shall continue in force for a longer period than 20 years without re-enactment of the Legislature, unless it be an incorporation for public improvement."

" Corporations," says Cooley, " intended to assist in the conduct of local self-government are sometimes styled political, sometimes public, sometimes civil and sometimes municipal, and certain kinds of them, with very restricted powers, quasi corporations—all these by way of distinction from private corporations."

Thus an incorporated school district or county as well as city is a public corporation; but the school district or county is not, while the city is a municipal corporation.

All municipal corporations are public bodies created for civil or political purposes; but all civil, political public corporations are not in the proper use of language municipal corporations.

A municipal corporation may be defined to be a body politic and corporate established by law to assist in the civil government of the State with delegated authority to regulate and administer

the local or internal affairs of a city, town or district which is incorporated.

"A body politic," says Lord Coke, "is a body to take in succession, formed as to its capacity by policy" and is therefore called by Littleton (section 4, 13) a body politic. It is called a corporation or body corporate because the persons are made into a body politic and are of capacity to take, grant, &c., by a particular name.

Public corporations for the government of a town, city or the like, being for public advantage are to be governed according to the law of the land. They are the mere creatures of the public institution, created exclusively for the public advantage without other endowments than such as the government may bestow upon them.

"It would seem reasonable," says Mr. Justice Washington, in Dartmouth College v. Woodward (4 Wheaton), "that such a corporation may be controlled and its constitution altered and amended by the government in such manner as the public interest may require. Such legislative interferences cannot be said to impair the contract by which the corporation was formed because there is in reality but one party to it." There is in fact no contract in any just sense of that word, and public municipal corporations are not founded on contracts.

The city of Wilmington is a public corporation. It is a municipal corporation which is, as we have seen, an incorporation by the authority of the State of the inhabitants of a particular place or district, and authorizes them in their corporate capacity to exercise subordinate specified powers of legislation and regulation with respect to their local and internal concerns.

The style and name of the corporation is the Mayor and Council of Wilmington, and it is declared by its charter that by that name they shall be and are hereby made able and capable in law to have, take, purchase, receive, possess, enjoy and retain to them and their successors, lands, tenements, hereditaments, goods, chattels and effects of what kind, nature or quality soever, and the same to sell grant, demise, alien or dispose of, to sue and be sued, implead and be impleaded, answer and be answered, defend and be defended in all courts of law and equity, or any other place whatsoever, and also to make, have and use a common seal, and the same to break, alter

and renew at their pleasure, generally to have all the privileges and franchise incident to a corporation or body politic.

Because it is a municipal corporation the plaintiff in error contends that its inhabitants are constitutionally entitled to all the rights and privileges of independent local self-government, and that all the property which the corporation is capable to have, take, purchase, receive and possess not necessary for the discharge of purely governmental purposes is as against the State, as well as against individuals, subject to the absolute and uncontrolled possession of the corporation as solely and absolutely as is the property of a purely private corporation or of a private individual. And that the provisions of our constitution guaranteeing the rights of property to the owners thereof is applicable to such property and its owners, equally as to like property when owned by private individuals.

The theory of the plaintiff in error, as presented and discussed by his counsel, is a beautiful one. It has all the charm which attaches to the principle of local self-government.

Whether the universal recognition by legislative and judicial tribunals as applicable to municipal corporations would be attended by all the advantages, and result in all the beneficial consequences supposed by its advocates can only be determined when human experience in this respect, if ever, may safely be invoked as a final arbiter.

Does the law, as the court should determine it to be, support the plaintiff's theory?

All that is absolutely necessary for us to say upon this subject is this: The corporation of the city of Wilmington, that is the people residing in the district known as the city of Wilmington, the name and style of whose corporation, that is the incorporation of the persons and inhabitants of that particular place, is the mayor and council of Wilmington, is merely an agency instituted by the State for the purpose of carrying out in detail the objects of government. It is essentially a revocable agency. It has no vested any of its powers or franchises. Its charter or act of right to incorporation is in no sense a contract with the State. It is subject to the control of the Legislature, who may enlarge or diminish its territorial extent or its functions, and may change

or modify its internal arrangement or destroy its very ' existence at discretion.    While it exists in subjection to the will of the State, whose will can only be expressed by the Legislature it enjoys the rights and is subject to the liabilities of any other corporation, public or private.    It is because it is a body politic, and has a legal entity and name and a seal by which it can act, that in addition to these the Legislature endowed it with the capacity to contract and be contracted with, to sue and be sued, to hold and dispose of property.    It is because it has this capacity and these powers that it can acquire rights and incur responsibilities.    These franchises were bestowed by the Legislature upon it, that it might exercise certain powers of government, not independently of or in defiance of the Legislature over that particular part of the State known territorially as the city of Wilmington.

These are its rights affecting its relations to other persons. They do not affect its relation to the State because in certain particulars as a private corporation it may make contracts which it cannot impair.    Its absolute dependence upon the will of the Legislature for its existence is not thereby diminished or destroyed. Its responsibility in respect to its contracts or torts does not affect its relationship to the State.    In our opinion the State may continue its corporate existence and yet appoint all or any of the agencies through which it has heretofore been accustomed to act.

The city of Wilmington has no vested rights as against the State nor rights not subordinate to the authority of the State.    In this respect it is precisely on the same footing and sustains the same relation to the State as all other municipal corporations within the State.    It has no dual character, as a corporation it is either public or private.    It is bound to fulfil its legal contracts and to answer before the legal tribunals for its torts in the same manner and to the same extent as a private corporation or a private individual. The courts for the administration of justice are equally open to to corporations of this character as to those of a private nature or to private individuals.    Its rights to property legally held, including the control and government thereof, in respect to all parties other than the State, are the same as if it were a real and not an ideal being.

In the case of Borough of Dunmore's appeal, 52 Penn. St.

Reports, 374, the court say : " Municipal corporations being crea-
tures of the legislative power are subject to the legislative will in a
manner and to an extent to which citizens are not. The constitu-
tional guarantees of the citizen were respected in giving him a
right of appeal, the municipal corporations having no such guaran-
tees the right of appeal was not given to them."

The counsel for the plaintiff in error referred us to the case of
New Orleans, Mobile & Chattanooga Railroad Company vs. the
city of New Orleans, 26 Louisiana Annual Reports, 481.

The first principle in his brief seems to be a transcript of a
portion of the opinion of the court in that case.

The court among other things said : ." A municipal corpora-
tion is appropriately defined to be ' the investing the people of a
place with the local government thereof, Salk., 183. It has no
powers not conferred upon it expressly or by fair implication by
the law of the state creating it or statutes applicable to it. Both the
persons and the place inhabited by them are indispensable to the
constitution of such a corporation. It is an agency to regulate and
administer the internal concerns of a locality in matters peculiar to
the place incorporated, and not common to the State or people at
large; but duties and functions may be and are conferred, and im-
posed, not local in their nature. It possesses two classes of powers
and two classes of rights—public and private. In all that relates
to one class it is merely the agent of the State and subject to its
control; in the other it is the agent of the inhabitants of the
place—the incorporators—maintains the character and relations of
individuals and is not subject to the absolute control of the legis-
lature, its creator.

Among this latter class is the right to acquire, hold and dis-
pose of property, to sue and be sued, &c.

It is true that these rights are originally derived from the
Legislature, but once conferred they are to be exercised while it
exists, at the will of the corporation, in its own, and as to its own
interests, for the inhabitants, just as certain rights are conferred on
private corporations and persons not *sui juris* as minors and mar-
ried women, but are not afterwards under the control of the legis-
lature."

In our opinion this case was properly decided, but we dissent

from much that was said by the judge in his opinion as interpreted by the counsel for the plaintiff in error. Much of what he said was not necessary. It was not necessary in that case that he should have said that a municipal corporation possesses two classes of powers, and two classes of rights, public and private, and that the latter is the right to acquire, hold and dispose of property, to sue and be sued, &c., and these remarks were not, in our opinion, in fact true.

The Legislature may, and generally does confer these rights upon all public corporations. The right to acquire, hold and dispose of property by a corporation does not make that property in any just sense of the word private property and the right and capacity to sue and be sued pertains no more to a private than to a public corporation.

The inhabitants of the city of Wilmington were constituted a corporation under the name and style of the Mayor and Council of the city of Wilmington, and were given a seal by the Legislature that they might acquire, hold and dispose of property, sue and be sued. But for what purpose or purposes? For public and not private purposes. The corporation is a public corporation. The uses for which the corporation may acquire and hold property must necessarily, we think, be public uses. Uses beneficial it may be some respects to the public at large, but certainly beneficial to the citizens generally of the municipality who may be called a particular local public, although a part of the general public of the State. Such property cannot in any sense be said to be private in the sense in which propety may be said to be private which is held by an individual citizen.

No citizen of Wilmington possesses any interest in the property of the municipality which is said to be private, which he can sell or in any manner dispose of. No portion of property held by the city passes to the local representatives of any inhabitant of the city or descends to his heirs upon his death; partition cannot be made of the real estate among the inhabitants in any manner known to law. Such property has not the incidents or qualities of private property attaching to property recognized as private among individual owners of property.

When a citizen of Wilmington removes from the city he

ceases to have any interest in the use of the property as one of the corporators.

When a person from the most distant part of the country moves into the city and becomes an inhabitant thereof he immediately becomes a corporator and entitled, as all other inhabitants, to an interest in the use of the property.

In the case cited from the Louisiana reports, the property in respect to which that case arose was public and not private property, that is to say, it was property held and owned by the city for the use of its inhabitants. The legislature had attempted to grant to a private corporation the right to construct a railroad upon or across this property, not under proceedings in condemnation, but absolutely and in deprivation of the right of the city in its property without providing that the private corporation should make compensation for the taking of it. Of course this could not legally be done, in one sense the property was private property, that is property owned by the corporation for the public use of the inhabitants of the city.

The inhabitants of a city, who are in fact the corporators under a charter creating a municipality are a portion of that general public which constitute a State. And they are also that particular public which constitute a municipality.

The municipality may hold property in which all the inhabitants of a state or of a county may be said to have an interest in some respect, but not as owners or proprietors. And it may also hold property in which the inhabitants of the municipality alone may properly be said to have an interest. Both classes of property are public. The one as to the people of the whole state or county, the other more particularly as to the inhabitants of the municipality.

It is only in this sense that the words public and private can with propriety be applied to such property when held by a municipality.

Although the property held for the municipality is in fact public as common to all the inhabitants of a city, it nevertheless may justly be said to be private property as being such property as is exempt from being taken or applied to any other public use by

the State, or by authority of the State, without compensation being made.

It was said in the course of the argument of the present case that the corporation of Wilmington owned a lot within the limits of the city, called the " sand lot." Now if the Legislature of this State had passedan act authorizing the Baltimore & Ohio Railroad Company to take any portion of this lot for the purpose of constructing their road, now in the course of construction through that city, without compensation, there could be no doubt that such an act would be unconstitutional as against the spirit of the constitution, which declares that private property shall not be taken for public use without compensation being made. The lot would be considered private as belonging exclusively to the corporation, although the use for which it is held by the corporation is public, for the benefit of all the inhabitants of the city. And the title in fact is in all the corporators, that is the inhabitants of the city. Had the Baltimore & Ohio Railroad Company in fact attempted to construct their road across this lot there can be no doubt that the city would have been entitled to an injunction restraining them from so doing.

While the municipality of Wilmington exists as a corporation, endowed with the capacity of purchasing and holding property, it has a right as against every other corporation or person to the use and enjoyment of its property as freely and fully as a private person can hold and enjoy similar property, but city corporations are emanations of the supreme law making power of the State and they are established for the more convenient government of the people within their limits.

In cities, for reasons partly technical and partly founded upon motives of convenience, the title of certain property is vested in the corporate body. It is not thereby shielded from the control to a certain extent of the Legislature as the supreme law making power of the State. While the corporation exists by authority of the State authorized to purchase and hold property for the inhabitants of the city to be paid for by the taxes levied upon the inhabitants, it would not, in our opinion, be competent for the State to take away such property and give it to other corporations or persons.

In case of the condemnation for public purposes as for instance

to enable the B. & O. Railroad Company to construct a road across the lot referred to, it would not, we suppose, be competent for the Legislature to direct that the condemnation money should be given to the corporation of the city of New Castle or should be applied to any municipal purpose of that city. But suppose the sand lot owned by the city of Wilmington should become worthless to the city or not adapted to any municipal use and valuable only for sale to private persons for building purposes. Could it be doubted that the Legislature might direct it to be sold and the proceeds be devoted to some municipal or public purpose within the city of Wilmington?

The right to acquire the property by means of taxation was conferred upon the city that the property so acquired might be useful to the city and we can imagine no limit to the control of the State over property so acquired consistent with the preservation of the property or of its proceeds for the uses and purposes for which it was acquired and the benefit of those for whom it was acquired.

The constituting a board of commissioners for the management of the property of a municipal corporation for the benefit of the corporators is no diversion of the property from the purposes of its acquisition. No title is thereby divested, and no property is wrongfully taken. In the case of the water works of the city of Wilmington, these works were not taken away from the city by the appointment of a board of commissioners to manage them; nor was their use diverted from its original purpose. Whether managed by the City Council or by the board of commissioners appointed by the authority of the Legislature, the uses and purposes of the water works—the supply of water to the corporators or inhabitants of the city—will be the same, and while these purposes and objects continue the same we can see no violation by the act of the Legislature of any equitable right of which the city may complain.

We have considered this question as though the city was in fact a party to this proceeding and complaining of a violation of its chartered rights; such however does not appear to be the case from the record before us.

David H. Coyle appears from that record to be the only party defendant below, and plaintiff in error here. He claims to hold

7

the appointment of chief engineer of the water department of the city of Wilmington by appointment of the City Council and he makes the objections that the act of the Legislature establishing the board of water commissioners is unconstitutional and that therefore the relator in this case has no authority to exercise the functions of chief engineer by appointment under the authority of said act.

We do not place our decision, however, in this case, upon the ground that the city of Wilmington or the Mayor and Council of the city of Wilmington are not technically parties to these proceedings, but upon the broad ground of the right of the relation under this or any other proceedings that can be had or taken to determine his right as between him and the plaintiff in error, or between him and the Mayor and Council, or any party or parties whomsoever.

We do not suppose that, if the powers conferred upon the board of water commissioners by the act of the Legislature creating it had by that act been conferred on the Council of Wilmington, any serious objection could or would have been made to the constitutionality of the act. If not, the controversy would be narrowed down to very small dimensions indeed. Has the City Council of Wilmington any vested or constitutional rights as against the State to manage or control the water works of the city of Wilmington or to appoint agents or managers to control them? They are the mere creatures of the Legislature, which can in a moment destroy, as in a moment it created them. The Legislature can divest the Council of any and every power and authority it possesses. It can direct that those powers should be exercised by any other department or agency of the city government and it could even direct that the functions now performed by the City Council should hereafter be performed by a like number of any other corporators of the city.

All the agencies of the city, that is of the corporators, can be abolished or changed at the will of the Legislature and even their functions terminated and assigned to other and different agencies. The Legislature can change the name and style of the corporation and even of the city itself without the consent and even against the will of the inhabitants. It may circumscribe or extend the limits of the corporation. It may divide the city into two, four or more cities and give to each a separate and independent organization

and burden the separate cities with such share in the payment of the existing debt of the city as shall be determined by a board of commissioners appointed by the Legislature for that purpose. It may declare that the amount so determined by such board shall be final upon the respective newly created cities.   In the *borough of Dunmore's appeal*, 52 Penn. St. Rep., before referred to, a township being in debt four boroughs were created out of it. An act was afterwards passed authorizing commissioners to ascertain the indebtedness of the township and the amount due from the boroughs respectively and make a just distribution of the indebtedness between the township and boroughs and requiring all persons having claims to present them.   An appeal was authorized from the decision of the commissioners on such claims.   The court said, as hereinbefore recited: "This legislation is unprecedented and perhaps severe but it denies trial by jury only to municipal corporators who being creatures of the legislative power are subject to the legislative will in a manner and to an extent to which the citizens are not.   The constitutional guarantees of the citizens were respected in giving him a right of appeal.   The municipal corporators having no such guarantees the right of appeal was not given to them.   The theory of the act was therefore unexceptionable.

May the city of Wilmington forever remain undivided and by the obedience of its inhabitants to law prove that it should be indivisible.

We have no doubt that should occasion arise for the exercise of the power the Legislature of the State would have the right to declare that the city of Wilmington should have and maintain not only suitable water works for the supply of the city with good and wholesome water but should have and maintain a proper fire department and proper gas works for the protection of the city from fire, and for the proper lighting of the city, for the convenience, safety and comfort of the inhabitants.   They might authorize the levying of taxes upon the inhabitants of the city for the defraying of the expenses necessary for the accomplishment of these purposes, and they might appoint commissioners to do whatever was necessary to be done to effectuate the act.

What the Legislature might do in respect to Wilmington, they

might do in respect to any and all municipal corporations in the State where, in their judgment, a like necessity might exist.

The police power of a State is great, and may do whatever is necessary to promote the safety and health of the inhabitants of a municipality.

We do not consider it necessary to express an opinion in reference to any question not properly put before us, such as the issuing of bonds and the pledging of the faith of the corporation or the State to their redemption in any manner. If such bonds have been issued or shall be issued on the faith of the one or the other, or any such pledge has been or shall be made by the one or the other, it will be time enough to consider that question and the rights of the parties that may be affected thereby when it shall be presented for our consideration by parties capable of making it, and having an interest in its determination. No such parties are before us. It would not become us to express any opinion as to the wisdom or propriety of the enactment, the constitutionality of which has been the subject of contention before us.

We deem it not improper however to say that in our opinion the affairs of a municipal corporation should generally be administered in accordance with the will of its inhabitants, who, it is reasonable to suppose, are better acquainted with what will conduce to their comfort, happiness and prosperity, than others possibly can be.

Whether this act should have been passed by the Legislature was a question to be determined solely by the Legislature itself. We can determine only as to the constitutionality of what the Legislature has done and in our opinion, the city of Wilmington being a municipal corporation all its powers under its charter are subordinate to the powers of the Legislature.

The Legislature having the power to repeal its existence, necessarily has the power to alter, amend or abolish any of the agencies through which the powers of the corporation are exercised or to change them or to substitute others in their place.

That although the water works of the city may have been prior to the passage of the act to establish a board of water commissioners under the control and management of the City Council in any manner whatever and may have been exercised through any

agencies whatever, it was competent for the Legislature to alter and change that control, management and agency as they might deem proper. Such alteration of control, management and agency, provided the same was not a diversion of the object and purposes for which the water works were established, would effect no vested right of the city or the corporation as against the State.

The rights of the corporators to the property being secured to them and the property of the corporators being preserved for its original purposes, if such be the case, and we see nothing in the act establishing a board of water commissioners to the contrary, this court is not at liberty to declare the act itself unconstitutional.

The judgment below is therefore affirmed.